# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARIE JARRY, | : | 3:08cv954 (WWE) |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SOUTHINGTON BOARD OF EDUCATION, SOUTHINGTON EDUCATION ASSOCIATION, and JOSEPH V. ERARDI, JR., THE CONNECTICUT EDUCATION ASSOCIATION INCORPORATED, and CHRISTOPHER HANKINS, | : | |
|     Defendants. | : | |

## MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT

In her complaint, plaintiff Marie Jarry alleges that defendants Southington Board of Education, Southington Education Association ("SEA"), Joseph Erardi, Jr., the Connecticut Education Association Incorporated ("CEA"), and Christopher Hankins terminated her employment in violation of her federal constitutional rights to due process and equal protection of the law. Plaintiff also makes state law claims for negligent infliction of emotional distress, negligent misrepresentation, intentional misrepresentation, and breach of the duty of fair representation.

In a ruling on a motion to dismiss, this Court dismissed the state law claims against the SEA, CEA and Hankins. Defendants Southington Board of Education and Erardi have filed a motion for summary judgment on all claims against them. For the following reasons, the motion for summary judgment will be granted.

## BACKGROUND

The parties have submitted statements of facts in compliance with Local Rule of Civil Procedure 56(a) accompanied by supporting exhibits that reveal the following

factual background.

In 2003, plaintiff commenced her employment as an elementary school teacher for the Southington Board of Education. At the time relevant to this action, plaintiff was a tenured second grade teacher at the Thalberg Elementary School. In her position, plaintiff received three personal days and fifteen sick days per year.

On April 30, 2008, plaintiff called the substitute teacher answering service and left a recorded message stating that she was going to use a sick day for May 1, 2008.

On May 1, 2008, plaintiff took a sick day from work to participate in the Howard Stern Show contest, "Hottest Wife, Ugliest Husband." While on the show, plaintiff and her husband were interviewed by Stern about their sexual relationship, plaintiff's attraction to her husband, and what use they had for the prize money.

After two other couples were interviewed, plaintiff and her husband were voted the winners, and they received a monetary prize.

On May 2, 2008, plaintiff taught her regular schedule as a second grade teacher at the Thalberg School.

On May 5, when plaintiff arrived at school, she found a note in her mail box stating that the school principal Beecher Lajoie needed to see her immediately. Lajoie informed plaintiff that she should accompany Jan Verderame, a union representative, to

make an appointment with the Superintendent of Schools, Dr. Joseph Erardi.  Plaintiff arranged for a meeting with Dr. Erardi at 2:15 p.m.

Later that morning, plaintiff met with Richard Terino, President of the SEA for approximately 30 minutes.  At that meeting, Terino discussed various sections of the Connecticut Code of Professional Responsibility for Teachers, including provisions relevant to the public trust and the responsibility of teachers to practice the profession according to the highest degree of ethical conduct and standards; teachers' professional judgment; and teachers' responsibility to the community to refrain from making statements or exploiting the educational institution for personal gain.

Later that day, plaintiff and her husband met with the representatives of the CEA, including defendant Attorney Hankins.  Plaintiff was advised of the potential for termination, certificate revocation, and possible police involvement relevant to her alleged defrauding of a public community.  Plaintiff was told that she could be arrested, that her certification could be revoked, and that she had violated her contract of employment.  Plaintiff maintains that she was told that the Southington Board of Education would press criminal charges against her and revoke her teaching certificate if she did not resign.  Attorney Hankins indicated that he believed that the Board of Education might pursue termination proceedings, and he described the benefits of resignation rather than proceeding with a termination process.

Later that afternoon, plaintiff, Attorney Hankins and Terino met with the School Board's attorney, Christine Chinni.  During that meeting, a resignation agreement was drafted that did not contain a revocation provision.

Prior to leaving the premises, plaintiff signed the resignation agreement and a

3

resignation letter that was drafted by Attorney Hankins. The resignation letter stated: "Kindly accept my irrevocable letter of resignation for personal reasons, effective today."

Plaintiff asserts that Attorney Hankins represented that the resignation was revocable within seven days.

On May 12, 2008, plaintiff sent a hand-delivered letter to Dr. Erardi's office that sought to revoke her resignation. By letter that same day, the School Board responded that it did not accept plaintiff's revocation.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir. 1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc., 664 F.2d at 351. In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson, 477 U.S. at 255. If a nonmoving party has failed to make a sufficient showing on an

4

essential element of her case with respect to which she has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 249.

Due Process

Plaintiff alleges that her due process rights were violated when defendants failed to provide adequate notice of the charges against her and an opportunity to be heard prior to her alleged constructive discharge. Plaintiff claims that her coerced resignation constitutes a constructive discharge.

The Due Process Clause of the Fourteenth Amendment requires that, generally, a person must be afforded the opportunity for a hearing prior to being deprived of a constitutionally protected liberty or property interest. U.S. Const. amend XIV, § 1; Bd. of Regents v. Roth, 408 U.S. 564, 569-70 & n.7 (1972).

The fundamental requisite of procedural due process is the opportunity to be heard. See Boddie v. Connecticut, 401 U.S. 371, 377 (1971). This opportunity must be granted within a meaningful time and manner. Armstrong v. Manzo, 380 U.S. 545, 552 (1965). Further, the hearing must be "appropriate to the nature of the case." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950).

In the context of an allegedly-coerced resignation, the Second Circuit held that a "pre-coercion hearing was neither feasible nor constitutionally required." Giglio v. Dunn, 732 F.2d 1133, 1134 (2d Cir. 1984); see also Stenson v. Kerlikowske, 205 F.3d 1324, 2000 WL 254048, *1 (2d Cir. 2000). As the Second Circuit reasoned, the only possible dispute at issue after an employee resigns is whether the resignation was voluntary or

involuntary, which cannot be determined in advance.  Giglio, 732 F.2d at 1135.

Plaintiff asserts that her due process right to a post-deprivation was violated. However, she has failed to invoke any authority that indicates that the Southington Board of Education should have afforded her such a hearing in the wake of her resignation.  Further, plaintiff cannot prevail on her claim of a post-deprivation violation because she did not challenge the voluntariness of her resignation through any of the available grievance procedures provided by a relevant collective bargaining agreement or state court remedies.  See Ifill v. New York State Court Officers Assoc., 655 F. Supp. 2d 382, 390-391 (S.D.N.Y. 2009); Geren v. Brookfield Board of Educ., 1992 WL 310578, *6 (Conn. Super) (a teacher in Connecticut has two avenues to contest the voluntariness of a resignation: grievance procedures pursuant to the collective bargaining agreement or court action).  Accordingly, summary judgment will be granted on the due process claims against the Southington Board of Education and Dr. Erardi. To the extent that such claim is also brought against the SEA, CEA and Hankins, summary judgment in defendants' favor is also appropriate.

Equal Protection

Plaintiff alleges that defendants acted with discriminatory purpose based on her gender.  Defendants maintain that plaintiff cannot establish the prima facie case or that a discriminatory intent animated defendants' treatment of her.

The Equal Protection Clause of the Fourteenth Amendment commands that the government treat all persons similarly situated alike.  U.S. Const. amend. XIV; see City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985).  Plaintiff's equal protection claim is analyzed under the burden-shifting framework set forth in McDonnell

6

Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973).  Under this framework, a plaintiff must first establish a prima facie case of discrimination that (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination.  Holcomb v. Iona College, 521 F.3d 130, 138 (2d Cir. 2008).  Although the plaintiff's initial burden is not onerous, she must show that the alleged adverse employment action was not made for legitimate reasons.  Thomas v. St. Francis Hosp. & Med. Ctr., 990 F. Supp. 81, 86 (D. Conn. 1998).

If plaintiff establishes a prima facie case, defendant must articulate a legitimate, non-discriminatory business reason for the alleged discriminatory action.  Plaintiff must then prove by a preponderance of the evidence that the supposed legitimate reason is actually a pretext for discrimination.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993).

Plaintiff can undermine defendants' legitimate rationale as pretextual by demonstrating weaknesses, implausibilities or contradictions in the proffered rational.  See Paladino v. DHL Express (USA), Inc., 2010 WL 1257786, *9 (E.D.N.Y. 2010).  A showing that an employer treated plaintiff less favorably than a similarly situated employee outside her protected group can raise an inference of discrimination.  Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003).  An employee is similarly situated to co-employees if they were (1) "subject to the same performance evaluation and discipline standards" and (2) "engaged in comparable conduct."  Graham v. Long Island R.R., 230 F.3d 34, 40 (2d Cir. 2000).  In considering whether the comparators and plaintiff are similarly situated in all material respects, the circumstances need not

be identical but must bear a reasonably close resemblance. Ruiz v. County of Rockland, – – F.3d – –, 2010 WL 2541179, *5 (2d Cir. 2010).

For purposes of ruling on this motion, the Court assumes that plaintiff has established a prima facie case. However, defendants have proffered as a legitimate rationale that they had a good faith belief that plaintiff's conduct constituted a violation of her employment obligations, Connecticut's criminal statutes, and the code of conduct applicable to Connecticut public school teachers. Plaintiff has not submitted evidence that raises an inference that such rationale is pretext for a discriminatory animus.

Plaintiff counters that defendants have treated her less favorably than other similarly situated individuals. She points out that another teacher, Mr. G., who had used twenty sick days to pursue other teaching employment, did not face the possibility of termination but was placed on administrative leave. Pursuant to an agreement between Southington Board of Education and the SEA, Mr. G. was required to pay restitution and provide an accounting of his absences or certain of his prior years of teaching with the Southington Board of Education. Although both plaintiff and Mr. G. misused sick leave for personal gain, the substance and more publicized nature of plaintiff's conduct implicated substantially differing concerns about plaintiff's continued employment as a teacher than the circumstances of Mr. G.

Plaintiff maintains that other teachers took a greater percentage of sick leave than she did without incurring any discipline. However, plaintiff provides no indication that these individuals used their sick leave for any illegitimate use.

Plaintiff also compares her treatment to that of male sexual harassers, who were allegedly allowed to remain on lengthy paid administrative leave. Plaintiff states

8

that none of these individuals were subjected to the same eight-hour ordeal as plaintiff. However, it is unclear whether these individuals were subjected to same pressures as plaintiff, but unlike plaintiff, declined to resign prior to an investigation. If plaintiff had refused to resign, she would also have been placed on paid administrative leave. Accordingly, plaintiff's evidence fails to undermine defendants' conduct as irrational, contradictory or inconsistent so as to raise an inference of pretext. The Court will grant defendants' motion for summary judgment on plaintiff's equal protection claim. To the extent that plaintiff's equal protection claim is brought against defendants SEA, CEA and Hankins, the Court will grant summary judgment.

### State Law Claims

Plaintiff's remaining claims against the Southington Board of Education and Dr. Erardi arise under state law. Accordingly, under 28 U.S.C. § 1367(c)(3), the Court will decline to exercise supplemental jurisdiction over these claims. See Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003).

## CONCLUSION

For the foregoing reasons, the motion for summary judgment [doc. # 56] is GRANTED on plaintiff's federal claims. Because the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims against the Southington Board of Education and Dr. Erardi, these claims are dismissed without prejudice.

_____/s/_____
Warren W. Eginton
Senior U.S District Judge

Dated this _23_ day of September, 2010 at Bridgeport, Connecticut.